A09A0208. LANKFORD v. THE STATE.
(672 SE2d 534)

BLACKBURN, Presiding Judge.

Following a jury trial, Anthony Lankford appeals his conviction on multiple counts of armed robbery, burglary, aggravated assault, and related crimes. He argues that the court erred in denying his motion to sever his trial from the other two defendants (accused of jointly participating in the same crimes on the same dates) and in denying his motion for mistrial that arose when the State announced mid-trial that two witnesses would be testifying to new information. We hold that the trial court did not abuse its discretion in refusing severance and that the mistrial motion is moot since neither of the two "new" witnesses in fact testified. Accordingly, we affirm.

Construed in favor of the verdict, *Short v. State*,[1] the evidence shows that shortly after midnight on the morning of May 21, 1999, three men disguised in ski masks and armed with a shotgun and a

handgun kicked in the door of a residence and, yelling they were federal agents, raced to the rear of the residence where the owner and some friends were in a back bedroom. A fourth man remained in the vehicle in which the men had arrived. One of the three entrants fired the shotgun through the closed bedroom door, shooting off the thumb of a man who was trying to keep the door closed. Once in the bedroom, the attackers, one of whom was wearing a camouflage jacket and brandishing the handgun, pointed their weapons at the room's occupants and demanded money from the homeowner and his four guests, taking from two of the occupants a wallet, an ankle monitor, keys, and money. The three men returned to the waiting car and with the fourth man escaped in the vehicle.

Before the victims could report the crime, an officer observed the vehicle with the four men, which was speeding and which ran a stop sign. As the officer followed them in his vehicle, they suddenly stopped their car and ran into the nearby woods, scattering and successfully escaping. They later met to conjure up stories they would tell to police to cover up their involvement in the crimes.

In the escape vehicle, the police lifted a fingerprint belonging to Patrick Garrison and found the stolen monitor and wallet, the camouflage jacket, shotgun shells, and the ski masks (one of which had Garrison's saliva and the second of which had a hair from Lankford). The fourth man (who at the crime scene had remained behind in the car and whose wife owned the escape vehicle) informed police of the details of the robbery and in exchange for a plea bargain agreed to testify against the other three. He identified Lankford as the man in the camouflage jacket who had carried the handgun into the home, and he identified Garrison as the man bearing the shotgun.

Lankford, Garrison, and the third man were jointly indicted on two counts of armed robbery,[2] one count of burglary,[3] two counts of possessing a firearm during the commission of a crime,[4] six counts of aggravated assault[5] (one count was later nol prossed), one count of aggravated battery,[6] and one count of impersonating an officer.[7] Lankford moved to sever his trial from the trial of the other two defendants, which the court denied. Lankford also moved for a mistrial (or in the alternative for a continuance) when on the fourth day of trial the State announced that one of its disclosed witnesses

---

[2] OCGA § 16-8-41 (a).

[3] OCGA § 16-7-1 (a).

[4] OCGA § 16-11-106 (b).

[5] OCGA § 16-5-21 (a) (2).

[6] OCGA § 16-5-24 (a).

[7] OCGA § 16-10-23.

would testify to additional information and that it might call a previously undisclosed (but missing) witness. Allowing Lankford an opportunity to interview the disclosed witness who was present, the court denied both aspects of the motion. The third defendant then struck a deal with the State and testified against Garrison and Lankford, and the two "new" witnesses never testified.

Based on this evidence, the jury convicted Garrison and Lankford on all counts (except the "nol prossed" aggravated assault count). Following the denial of their respective motions for new trial, both men appealed, with Garrison's conviction being affirmed in *Garrison v. State*.[8] Lankford brings the present appeal.

1. Lankford first argues that the trial court erred in denying his motion to sever his trial from that of the other two defendants. Based on the relevant criteria, we hold that the trial court did not abuse its discretion in denying the motion.

As the moving party, Lankford had "the burden of making a clear showing of prejudice and a denial of due process in the absence of severance." (Punctuation omitted.) *Adkins v. State*.[9] The questions to be considered by the trial court in deciding a motion to sever are:

(1) Will the number of defendants create confusion as to the law and evidence applicable to each? (2) Is there a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions? (3) Are the defenses of the defendants antagonistic to each other or to each other's rights?

(Punctuation omitted.) *Howard v. State*.[10] The trial court has the discretion to determine whether a severance is necessary, OCGA § 17-8-4 (a), and we will not set aside that determination unless there is an abuse of that discretion. *Moss v. State*.[11]

We discern no abuse in the trial court's decision to deny severance here. The number of defendants (three) was sufficiently small so that the danger of confusion appeared minimal, especially as the three were charged with jointly participating in the same offenses and as the offenses were committed as part of the same crime scheme. See *Adkins*, supra, 279 Ga. at 426 (3). There appeared to be no danger that the evidence against one would be considered against the others, as the testimony showed the roles of each of the

---

8 *Garrison v. State*, 276 Ga. App. 243 (622 SE2d 910) (2005).
9 *Adkins v. State*, 279 Ga. 424, 426 (3) (614 SE2d 67) (2005).
10 *Howard v. State*, 279 Ga. 166, 171 (4) (611 SE2d 3) (2005).
11 *Moss v. State*, 275 Ga. 96, 97 (2) (561 SE2d 382) (2002).

men to be fairly well-defined. Lankford's argument that stronger evidence (the fingerprint in the car and the saliva on the ski mask found in the car) tied the robbery to Garrison overlooks the fact that Lankford's hair was found in the other ski mask left in the escape vehicle and that the fourth man (later corroborated by the third man's testimony) identified Lankford as the man brandishing the handgun and wearing the camouflage jacket that was found in the vehicle.

Moreover, even if the evidence tying Garrison to the crime were stronger, "the fact that the evidence as to one of two co-defendants is stronger does not demand a finding that the denial of a severance motion is an abuse of discretion, where there is evidence showing that the defendants acted in concert." (Punctuation omitted.) *Strozier v. State*.[12] Here, the fourth man whose wife owned the car (and later the third man) testified that Garrison and Lankford were acting in concert before, during, and after the robbery.

With regard to the third question (whether the defendants' defenses were antagonistic to each other), Lankford readily concedes in his appellate brief that at the time the motion to sever was considered, the defenses indeed were not antagonistic to each other. However, he notes that when the third defendant decided on the fourth day of trial to turn State's evidence and to confess to his and their involvement in the crimes, the defenses then became antagonistic. We can hardly expect trial judges to be clairvoyant and to predict that defendants who are presenting complementary defenses will later turn on each other. We discern no abuse of discretion in the trial court's decision to deny severance here.

2. Lankford argues that the trial court erred in denying his motion for mistrial (or in the alternative for a continuance), which was based on the prosecutor's announcing on the fourth day of trial that (i) one of its disclosed witnesses (of whom Lankford was keenly aware) had just the night before told the prosecutor of additional incriminatory testimony and (ii) a yet unfound and previously-undisclosed witness might testify. Over Lankford's objection, the trial court ruled that they would be allowed to testify so long as Lankford had an opportunity to interview them before their testimony. Citing to former OCGA § 17-7-110 and to *Bentley v. State*[13] and *Davis v. State*,[14] Lankford contends that the trial court was required to grant his related motion for a mistrial or for a continuance. *However, neither of these witnesses ever testified*, which pre-

---

[12] *Strozier v. State*, 277 Ga. 78, 81 (5) (b) (586 SE2d 309) (2003).

[13] *Bentley v. State*, 210 Ga. App. 862, 863 (2) (b) (438 SE2d 110) (1993).

[14] *Davis v. State*, 135 Ga. App. 203, 206-207 (3) (217 SE2d 343) (1975).

cludes any showing of harm from the trial court's ruling allowing them to testify and which moots the related motions for mistrial and continuance.

Moreover, former OCGA § 17-7-110, on which Lankford and his cited cases of *Bentley* and *Davis* relied, was repealed effective January 1, 1995. Ga. L. 1994, p. 1895, § 1. See *McLarty v. State*.[15] Under the present statute, the trial court for good cause may allow witnesses to testify (even though notice is late) if the court also affords defense counsel an opportunity to interview the witnesses prior to their being called to testify. OCGA § 17-16-8 (a). The court afforded Lankford just such an opportunity here, after finding that the prosecutor had only just learned of the new information. Even if the witnesses had testified, we would have been hard pressed to discern any abuse of discretion in the decision to deny the motion for mistrial. See *Smith v. State*[16] ("[w]hether to grant or deny a motion for mistrial is necessarily a matter largely within the discretion of the trial court").

*Judgment affirmed. Adams and Doyle, JJ., concur.*

DECIDED JANUARY 16, 2009.

*Word & Simmons, Maryellen Simmons, Drummond & Swindle, Jason W. Swindle*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.

---

[15] *McLarty v. State*, 238 Ga. App. 27, 28 (2) (516 SE2d 818) (1999).

[16] *Smith v. State*, 284 Ga. 17, 23 (6) (663 SE2d 142) (2008).